IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

TERRY VAN WILLIAMS,                    :
                                       :
            Plaintiff                  :
                                       :
                                       :
    VS.                                :          **7 : 03-CV-120 (HL)**
                                       :
COOK COUNTY, GEORGIA, et al.,          :
                                       :
                                       :
            Defendants.                :
_____

## RECOMMENDATION

Presently pending in this § 1983 action is the defendants' Motion for Summary Judgment. The undersigned notified the plaintiff of the filing of the defendants' motion, advised him of his obligations under the law, and directed him to respond thereto within thirty (30) days of his receipt of the court's order.

### *Background*

The plaintiff filed this action in October 2003, raising allegations of deliberate indifference to serious medical needs and various allegations of unconstitutional conditions of confinement. In an order dated August 13, 2004, the court dismissed certain claims and defendants herein, leaving as defendants Charles Bryant, Sheriff of Cook County, Georgia, Colin Millison, Shannon Kingston, Trent Exum, Justin Ellis, and Phillip Cowart, jailors and/or officials of the Cook County Sheriff's Department.

In his claims that remain pending before this court, the plaintiff alleges that on the evening of November 1, 2001, he slipped and fell on a bar of soap while showering at the Cook County Jail, sustaining serious injuries to his neck and back. The plaintiff maintains that he slipped as a

result of jail officials' failure to repair the only light in the second floor shower room, and to remove a covering over the hall light placed by another inmate.  Plaintiff alleges that in September 2001, he had offered to repair the shower light but was denied by Kingston and/or Bryant.  Plaintiff alleges that Kingston, Exum, Ellis, and Cowart were all aware of the broken and covered lights and the resulting darkness in the shower.

After his fall, the plaintiff was taken to the hospital, where a physician allegedly recommended that plaintiff receive an MRI within the next week.  Based on observation of breathing problems, the physician also prescribed antibiotics and a combivent inhaler, with directions that plaintiff should be moved to a warmer cell.  Plaintiff was returned to the same cell upon his return from the hospital.  He alleges that he complained to defendants Kingston, Exum, Ellis, and Cowart about the condition of the window and temperature of his cell, but that nothing was done to correct the situation and that he was denied his request for a blanket.  Plaintiff alleges that he overheard defendant Millison telling Exum that the sheriff would not pay for an MRI and to transfer plaintiff to the Georgia Department of Corrections as soon as possible.  Plaintiff was transferred from the Cook County Jail to the custody of the GDOC two (2) months later, with no MRI having been performed.

***Standard of review***

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  All facts and reasonable inferences drawn therefrom must be viewed in the light most favorable to the

nonmoving party, although the nonmoving party may not rest on the pleadings but must set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); Van T. Junkins & Assoc. v. U.S. Industries, Inc., 736 F.2d 656, 658 (11th Cir. 1984).

As the parties moving for summary judgment, the defendants have the initial burden to demonstrate that no genuine issue of material fact remains in this case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Clark v. Coats & Clark, Inc., 929 F.2d 604 (11th Cir. 1991).  The defendants have supported their motion with various affidavits.

***Deliberate indifference***

The deliberate indifference standard has both an objective and a subjective component. "First, under the 'objective component', a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment."  Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (citing Hudson v. Macmillian, 503 U.S. 1, 8 (1992)).  A plaintiff must show that a condition of his confinement

> pose[s] an unreasonable risk of serious damage to his future health [or safety]. . . [T]he Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the challenged condition of confinement].  It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk.

> Helling v. McKinney, 509 U.S. 25, 35-36 (1993).

Secondly, "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial

risk of serious harm exists, and he must also draw the inference." <u>Farmer v. Brennan</u>, 114 S. Ct.

1970, 1979 (1994). "Our cases have consistently held that knowledge of the need for medical

care and an intentional refusal to provide that care constitutes deliberate indifference." <u>Adams v.</u>

<u>Poag</u>, 61 F.3d 1537, 1543 (11th Cir. 1995). "[A]n official's failure to alleviate a significant risk

that he should have perceived but did not, while no cause for commendation, cannot under our

cases be condemned as the infliction of punishment." <u>Farmer</u>, 114 S.Ct. at 1979.

*Fall in the shower*

According to the plaintiff's complaint and his deposition testimony, the light in the shower

room itself and the light in the adjacent hallway were not functioning on the night in question.

Plaintiff maintains that the shower light had been out for weeks**,** and that although trustee

inmates had tried to change the bulb, the light did not work.  The plaintiff alleges that another

inmate, confined across the hall from the shower area, placed a garbage bag over the hall light,

and that the combination of these lighting failures, as well as a bar of soap in the shower stall,

caused him to fall and injure his neck and back.  The plaintiff testified that the bag had been over

the hallway light only a day or two, as the inmate who placed the bag over the light arrived at the

jail in late October 2001.  In his deposition, the plaintiff maintains that he offered to repair the

shower light, but was refused, and that he told defendants Ellis, Cowart, Exum and Kingston

about the garbage bag over the hall light, but that these defendants failed to have the obstruction

removed.

In their affidavits filed in support of their motion for summary judgment, defendants

Bryant, Kingston, Exum, Ellis, and Cowart individually maintain that they had no knowledge

that the light in the shower was not working or that the hall light had been covered by a garbage

bag, nor did they have any knowledge of soap on the shower floor, prior to the plaintiff's fall in November 2001.  Defendant Bryant states that as sheriff, he did not visit the second floor of the jail on a regular basis, and the plaintiff maintains that he did not see Bryant in the jail during his period of incarceration between September 19, 2001 and December 28, 2001.  Kingston, the jail administrator during the time period in question, stated that she inspected the second floor three (3) times each shift, while jailers Exum, Ellis, and Cowart inspected the second floor area at least once each hour of each shift.  Kingston, Exum, Ellis, and Cowart each stated that had they seen obstructions placed over the second floor hallway light, they would have removed same or had someone remove it.  Defendants Kingston, Exum, Ellis, and Cowart further stated that even if both the shower and hall lights had been out, they would not have considered those circumstances to create a safety hazard as the light over the stairs provided illumination to the shower room.

        In the affidavits supporting their summary judgment motion, the defendants have established that they were unaware of the conditions about which the plaintiff complains, a combination of conditions which the plaintiff alleges resulted in his fall in the Cook County Jail shower on November 1, 2001.  Each of the defendants testified that he/she had no recollection that the shower light itself was not functioning, that the hall light was obstructed by a garbage bag, or that a bar of soap remained on the shower floor.  Defendants Kingston, Exum, Ellis, and Cowart further testified that even if both the shower light and the hallway light were out, the stairwell light provided illumination for the shower area.  Although the plaintiff maintains that the shower light had been out for months and that the bag over the hall light was clearly visible, in <u>Farmer</u>, the Supreme Court **rejected** the argument that "a prison official who was unaware of

5

a substantial risk of harm to an inmate may nevertheless be held liable under the Eighth
Amendment if the risk was obvious and a reasonable prison official would have noticed it."
Farmer, 114 S. Ct. at 1981.  The plaintiff has failed to come forward with anything more than his
conclusory allegations and assertions that the lights were not functioning or obstructed and that
the defendants were aware of these conditions **and** the risk imposed by the combination of
conditions.  Although the plaintiff attached a list of witnesses to his complaint, he has not
submitted any affidavits or statements from these witnesses to support his claims and rebut the
defendants' summary judgment showing, nor has he submitted anything to overcome the
defendants' showing that they had no knowledge of the allegedly dangerous conditions and any
risk posed by the combination of conditions.

*Medical care*

The plaintiff also alleges that the defendants failed to provide adequate medical care, in
that they failed to provide the plaintiff with an MRI of his spine following the directions of the
emergency room physician who treated him following his fall in the jail shower.  The defendants
have presented the affidavit of Dr. Roberto Rubio, the emergency room physician who examined
and treated the plaintiff at Memorial Hospital in Adel on the night in question.

According to the plaintiff, defendant Ellis called an ambulance for the plaintiff after his
fall in the shower.  Plaintiff was transported by ambulance to Memorial Hospital in Adel,
Georgia.  Dr. Roberto Rubio examined the plaintiff and ordered x-rays of his back and chest.
The plaintiff maintains that Dr. Rubio recommended that he receive an MRI of his spine after his
return to the jail, but that he never received the MRI.

Deliberate indifference "requires that the actor recklessly ignore the medical situation in

6

the face of information that a reasonable person would know requires action."  Howell v. Evans, 922 F.2d 712, 720 (11th Cir. 1991), *rev'd. on other grounds,* 12 F.3d 190 (1994). "Mere incidents of negligence or malpractice do not rise to the level of constitutional violations.  Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (citations omitted).  "[T]he question whether an x-ray -- or additional techniques or forms of treatment -- is indicated is a classic example of a matter for medical judgment.  A medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment."  Estelle v. Gamble, 429 U.S. 97,107 (1976).

        In his affidavit, Dr. Rubio states that his neurological examination of the plaintiff on the night of November 1, 2001, did not reveal any acute neurological changes.  Plaintiff's x-rays revealed only mild degenerative changes with no acute abnormalities or swelling in the area. The plaintiff did not suffer any fractures or subluxations as a result of his fall in the shower.  Dr. Rubio diagnosed the plaintiff as having a neck contusion and chronic obstructive pulmonary disease.  He treated plaintiff's neck contusion with a soft cervical collar and a prescription for a pain medication.  Rubio states that "[b]ecause my examination of Williams did not reveal any acute neurological changes, I did not order an MRI of Williams' cervical or lumbar spine.  I did not feel as though an MRI was warranted under the circumstances."  Rubio affidavit at ¶ 21.  To the extent that the plaintiff alleges that Rubio recommended he receive an MRI after his return to the jail and the defendants failed to do so, such disagreement over the proper course of medical treatment will not support a claim of deliberate indifference.  Although the plaintiff has

presented certain medical records regarding subsequent MRIs of his back, nothing in these records supports the plaintiff's contention that a MRI was required or ordered by Dr. Rubio or any other physician.  *Cell conditions*

Finally, the plaintiff alleges that the defendants were deliberately indifferent to the condition of his cell, in that he was exposed to cold temperatures, with no functioning window to block colder temperatures, no blanket, and a lack of effective heating.  As with any allegation of unconstitutional conditions of confinement, a prisoner must prove both that the conditions were sufficiently serious to violate the Eighth Amendment, and that the defendant officials "acted with a sufficiently culpable state of mind" in exposing and/or failing to protect the plaintiff from the condition(s).  Hudson, 503 U.S. at 8.  The Eleventh Circuit has found that the Eighth Amendment applies to claims of "inadequate cooling and ventilation", and presumably this extends to and encompasses claims of inadequate heating as well.  Chandler v. Crosby, 379 F.3d 1278, 1294 (11th Cir. 2004).  Additionally, the Eleventh Circuit has found that "the Eighth Amendment is concerned with both the 'severity' and the 'duration' of the prisoner's exposure" to these conditions.  Id. at 1295.  Perhaps most importantly to our purposes herein, the Eleventh Circuit has noted that "a prisoner's mere discomfort, without more, does not offend the Eighth Amendment."  Id.

In his complaint, the plaintiff alleges that

> around the middle or toward the end of October 2001, we had a cold front came [sic] through.  The temperature was down in the 30's at night, as this information can be verified by weather records. Plaintiff was in cell three, second floor by himself.  Plaintiff had on a pair of blue jeans and a t-shirt, and one shirt to cover with.  There was no heat in the cell . . . Plaintiff asked Defendant Justin Ellis if Plaintiff could get a blanket, that Plaintiff was freezing.  Defendant Ellis responded that it wasn't time to hand out blankets, and they

8

didn't have no blankets, because they had a linen service contract, and they hadn't order none. . . . [Following Plaintiff's fall], Doctor Rubio Roberto prescribed me hard antibiotics and a combavent inhaler.  Doctor Roberto told Defendant Ellis and Plaintiff that I needed to be move [sic] to a warm cell. . . . Defendant Ellis put the plaintiff back in the same cell, cell three, second floor.  Plaintiff told Defendant Ellis that he didn't need to go back in that cell, that I was already sick, and he heard what Doctor Rubio Roberto had said. Defendant Ellis said we will see about moving you tomorrow. . . . On several occasions, Plaintiff in cell three, second floor, requested to be moved or get some duct tape and plastic to cover the hole in the window.  Defendants Exum, Ellis, Cowart and Kingston always responded with, we will see about it, or the jail is full and we have nowhere to move you. Plaintiff never got any actions taken from his requests.

Plaintiff's complaint at ¶¶ 73 - 91.

The court notes that the plaintiff does not allege that he was denied clothing or other bedding, but that his cell was not adequately heated, with open and broken window(s), and that he was not provided a blanket, with temperatures in the thirties, at night, for several days.

In their motion for summary judgment, the defendants assert that although information obtained from the National Climatic Data Center shows four days during October 2001 in which the temperature dipped into the 30's, it also shows that the highs reached into the 80s for twenty-two (22) days during this same month.  Furthermore, the defendants assert, the plaintiff has not established that temperatures *inside* the Cook County Jail, and particularly in his cell, reached into the 30s.  The defendants maintain that there is no indication or showing that the temperatures in plaintiff's cell during the time period in question subjected him to a substantial risk of serious harm.  Defendants Exum and Millison testify in their affidavits that the jail was equipped with a heating system that, although lacking a vent in each cell, was set up to blow heated air into each cell through a hole in the door.

9

Viewing all facts and reasonable inferences in the light most favorable to the plaintiff, the plaintiff has failed to overcome the defendants' showing that the plaintiff was not subjected to a substantial risk of serious harm.  As the defendants point out, this is not a case in which temperatures inside the plaintiff's cell were shown to be below freezing for several days, resulting in frozen toilet water or worsened by malfunctioning heating systems.  Cf. Corselli v. Coughlin, 842 F.2d 23 (2nd Cir. 1988); Henderson v. DeRobertis, 940 F.2d 1055 (7th Cir. 1991). The conditions described by the plaintiff establish conditions of discomfort and nothing more, with nighttime temperatures only reaching into the 30's and some form of heating system operating in the jail.  Moreover, the plaintiff has provided no support for his allegations that the cell conditions caused him any injury; the affidavit testimony of Dr. Rubio establishes that he diagnosed the plaintiff as suffering from chronic obstructive pulmonary disease, a "chronic condition that is generally associated with smoking.  It is not a condition that is brought on by exposure to cold weather."  Rubio affidavit at ¶ 24.

Inasmuch as the plaintiff has failed to overcome the defendants' showing that they did not act with deliberate indifference to any risk of serious harm to the plaintiff while he was confined at the Cook County Jail, the defendants are entitled to a grant of summary judgment in their favor.  Accordingly, it is the recommendation of the undersigned that the defendants' Motion for Summary Judgment be **GRANTED**.  Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable Hugh Lawson, United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

**SO RECOMMENDED**, this 31st day of July, 2006.

10

 /s/ **_Richard L. Hodge_**
RICHARD L. HODGE
UNITED STATES MAGISTRATE JUDGE